IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| *In re:* | ) | |
| | ) | |
| LB Steel, LLC, | ) | Adversary No. 17 A 390 |
|       Debtor. | ) | |
| | ) | Bankruptcy No. 15 B 35358 |
| | ) | |
| | ) | Honorable Janet S. Baer |
| _____ | ) | _____ |
| | ) | |
| The Official Committee of Unsecured | ) | |
| Creditors of LB Steel, LLC, | ) | |
| | ) | |
|     Plaintiff/Appellee, | ) | Case No. 22 C 5666 |
| | ) | |
|     v. | ) | Honorable LaShonda A. Hunt |
| | ) | |
| Steelcast Limited and Steelcast, LLC, | ) | |
| | ) | |
|     Defendants/Appellant,[1] | ) | |

**MEMORANDUM OPINION AND ORDER**

This appeal arises out of the chapter 11 bankruptcy case of LB Steel, LLC ("Debtor"). Plaintiff/Appellee, The Official Committee of Unsecured Creditors of LB Steel, LLC ("Committee"), initiated an adversary proceeding against Appellant/Defendant Steelcast Limited ("Limited") and Defendant Steelcast, LLC ("LLC"), seeking to avoid preferential payments made by Debtor to Limited and/or LLC during the 90-days preceding the bankruptcy filing. The parties filed cross-motions for summary judgment on the adversary complaint, which the bankruptcy court granted in part and denied in part. The parties proceeded to a bench trial; the bankruptcy court found in favor of the Committee. Limited raises several issues on appeal, but the dispositive

---

[1] Only Appellant Steelcast Limited filed this notice of appeal. (R.112). The bankruptcy court previously entered a default judgment against Defendant Steelcast, LLC (R. 111).

1

question is whether the bankruptcy court erred in concluding that Limited was a creditor of Debtor who received payments on account of an antecedent debt for purposes of 11 U.S.C. § 547(b). Upon consideration of the briefs and oral argument, the decisions of the bankruptcy court are affirmed with instructions.

## BACKGROUND[2]

Debtor was a distributor of non-prime steel plates and steel parts for various industries and customers throughout North America. It filed a voluntary petition for chapter 11 relief on October 18, 2015. Around the time of the events in question, Limited was an Indian company with its sole place of business on Ruvapari Road, Bhavnagar, Gujarat India. LLC was an Illinois limited liability company with an office located at 800 E. Ellis Road #569 in Norton Shores, Michigan. Limited and Makary & Associates, Inc., ("M&A"), an Illinois corporation, each owned 50% of the membership interests in LLC. However, Limited states that LLC was exclusively managed by M&A and its president, Vaughn Makary ("Makary").

### A. Payment History

Limited manufactured steel plate, steel parts, and other steel products that were purchased by Debtor. But Limited contends it never conducted business with Debtor directly; instead, Limited sold the items to LLC, which in turn sold them to Debtor. This distinction matters. During the preference period covering the 90 days leading up to the bankruptcy filing in October 2015, Debtor paid a total of $252,393 for goods manufactured by Limited, by issuing three checks payable to "Steelcast LTD, 800 E. Ellis Road, #569, North Shores, MI 49441." (R. 8-2 at 168-

---

[2] This section is comprised of mostly undisputed facts taken from the designated record on appeal. (*See* Dkt. 8-2). Any page numbers in citations refer to the "PageID" at the top of the CM/ECF header, not other page numbers in the header or footer of the document. Although the record contains duplicates of many documents, which are also attached to separate appendices to the parties' briefs, (Dkts. 12-1; 13-1 and 13-2), to avoid confusion, only one citation is listed. As far as the Court can tell, the cited document is accurate.

2

174). LLC nonetheless endorsed and deposited these checks into LLC's bank accounts. (*Id*). LLC then remitted payment to Limited in the amount of $215,129 for these goods that were manufactured for and purchased by Debtor. (R. 8-2 at 128-130).

The chart below summarizes the alleged preferential payments:

| Invoice No. | Invoice Date | Invoice Amount | Check No. | Check Amount | Check Cleared |
|---|---|---|---|---|---|
| 1649 | 5/18/2015 | $57, 436 | 122269 | $125,326 | 8/27/2015 |
| 1648 | 5/18/2015 | $67,890 | | | |
| 1663 | 5/31/2015 | $67,890 | 122418 | $67,890 | 9/6/2015 |
| 1664 | 5/31/2015 | $59, 177 | 122545 | $59,177 | 10/13/2015 |
| | | | | $252,393 | |

(R. 8-2 at 90-96).

The parties point to various documents in the record to explain some of the pertinent dealings between Debtor, LLC, and Limited: (1) Debtor purchase orders directed to Limited and addressed to LLC in Michigan for billing and shipment to Debtor in Illinois (R. 12-1 at 4282-4284)[3]; (2) an LLC purchase order directed and addressed to vendor Limited in India for shipment to Debtor in Illinois (R. 12-1 at 4281); (3) LLC invoices directed and addressed to Debtor in Illinois for billing and shipment to Debtor in Illinois of goods manufactured by Limited in India (R. 8-2 at 176-179); and (4) Limited export invoices for goods manufactured by Limited in India for delivery to Debtor in Illinois (R. 8-2 at 181-184). Debtor's total payments to Limited are consistent with the invoices LLC issued to Debtor—$252,393—which is the amount the Committee seeks to avoid

---

[3] Although it appears that these documents were included in the summary judgment submissions before the bankruptcy court and therefore should have been designated as part of the record on appeal, the Court cannot locate them in the nearly 3800 pages filed at R. 8-2. Accordingly, the Court cites to the separate appendix attached to the opening brief of Limited.

3

as preferential. That said, Limited invoiced LLC for only $215,129—which is the amount LLC remitted to Limited from the funds paid by Debtor.

Specifically, relevant here,

(1) Debtor issued a purchase order **(PO18665-03)** dated April 8, 2015 to "Steelcast LTD, 800 E. Ellis Road, #569, North Shores, MI 49441" for shipment in July 2015 and billed to Debtor with payment "Net 30 days." (R. 12-1 at 4282-4284).

(2) LLC then issued a purchase order **(P.O. 1511)** dated April 13, 2015 to vendor "Steelcast Limited, Ruvapari Road, Bhavnagar, Gujarat 364 005, India" for shipment to Debtor in Illinois in connection with customer **PO18665-00** with a total amount due of $213,585 and payment term of "Net 30." (R. 12-1 at 4281).

(3) LLC issued **invoice numbers 1648** and **1649** on May 18, 2015, and **invoice numbers 1663** and **1664** on May 31, 2015 in connection with **PO 18665-00** to Debtor with a total amount due of $252,393 and payment term of "Net 30." (R. 8-2 at 176-179).

(4) Limited prepared export invoices dated May 18, 2015 that reference **Debtor PO 18665-0 and LLC PO 1511**, and May 31, 2025 that reference **Debtor PO 18665-03 and LLC PO 1511R**. (R. 8-2 at 181-184). The Limited invoices identify Debtor as the consignee to whom the product is being delivered and Limited as the exporter to whom payment should be remitted. Of the four invoices, under the section titled "Buyer (if other than consignee), one lists the full name and address of LLC in that section while the other three include contact information for a purchasing agent at LLC only. (*Id.*)

(emphasis supplied).

As noted *supra*, Debtor paid the four invoices received from LLC—which do not specify to whom payment should be made—with checks payable to Limited at the mailing address of LLC.

Furthermore, on June 16, 2015—within weeks of invoicing by Limited and LLC but before Debtor received the steel orders[4] or remitted any payment—LLC sent Debtor the following letter:

"Thank you for the steel casting business you have extended to our company Steelcast LLC and our partners Steelcast LTD. We value this relationship and look forward to many more years of mutual cooperation.

---

[4] The Court presumes that the steel was delivered to Debtor sometime around July 2015, as requested on LLC's purchase order to Limited and as reflected on LLC's invoices to Debtor. (Dkt. 12-1 at 4281; Dkt. 8-2 at 176-179).

4

> After a detailed review of the method we are doing business between [sic] Steelcast LTD and Steelcast LLC, we have decided this system is not the most effective for our companies and our customers.
>
> In order to better serve you in the future, all future orders should be placed on Steelcast LTD. Steelcast LLC will no longer exist as a company after the current orders are filled.
>
> Our team will continue to have an on-going sales and customer service relationship with Steelcast LTD. We look forward to working together for many years into the future."

(R. 8-2 at 411).

The record is not clear about when LLC actually shut down. The Court previously took judicial notice of a verified complaint filed by Limited against Makary asserting that LLC ceased operations as of May 31, 2015.[5] (Dkt. 18). Nevertheless, as the chart above reflects, Debtor paid invoices from LLC via checks made out to Limited in August, September, and October 2015, during the preference period, that were deposited into LLC's bank account.

### B. **Preference Action**

Contending that Limited and/or LLC was a creditor of Debtor, in July 2017, the Committee, which had been previously appointed by the bankruptcy court to pursue all avoidance actions, filed a four-count complaint against both entities for avoidance of preferential transfers under 11 U.S.C. § 547 (Count I); avoidance of fraudulent transfers under 11 U.S.C. § 548, (Count II); recovery of preferential transfers under 11 U.S.C. § 550 (Count III); and disallowance of any claims of Limited and LLC in the bankruptcy case under 11 U.S.C. § 502(d) (Count IV). In August 2019, Limited

---

[5] According to the Illinois Secretary of State website, LLC was involuntarily dissolved on January 13, 2017. *See* https://apps.ilsos.gov/businessentitysearch/businessentitysearch (last visited April 1, 2025). Courts can take judicial notice of an "adjudicative fact that is both not subject to reasonable dispute and either 1) generally known within the territorial jurisdiction of the trial court or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (internal quotations omitted).

filed a motion for summary judgment; in September 2019, the Committee filed a cross motion for summary judgment.[6]

Limited subsequently filed a motion to strike part of the affidavit of Patrick O'Malley, who worked as Debtor's chief restructuring officer during the bankruptcy, on the grounds that it contained statements made "on information and belief" as well as inadmissible legal conclusions, neither of which satisfied Fed. R. Civ. P. 56. The bankruptcy court denied that motion in an oral ruling on October 9, 2019, but treated it as a response to the affidavit. (R. 9).

In its July 24, 2020, opinion, the bankruptcy court granted in part the Committee's motion for summary judgment as to Count I and denied it as to Counts III and IV.  In the same order, the bankruptcy court granted Limited summary judgment on Count II and denied it as to Counts III and IV.  The court held that the Committee had established every element of a preference action except one—whether Debtor was insolvent in the ninety days before filing—which was a factual issue to be determined at a trial in a related adversary.

Following that trial, the bankruptcy court issued an opinion on October 11, 2022, finding that Debtor was insolvent when the checks were sent to "Steelcast LTD" and therefore the Committee was entitled to summary judgment on Count I and Count III.  (R. 8-2 at 483). The bankruptcy court ruled that because neither LLC nor Limited had filed any claims and were by then time-barred from doing so, that Count IV was moot.  (R. 8-2 at 481-482).

Limited timely appealed, raising four primary arguments: (1) Limited was not a creditor of the Debtor; (2) there can be no recovery under § 550(a); (3) the bankruptcy court erred by denying

---

[6] Although Limited did not file a separate response to the Committee's Local Bankruptcy Rule 56.1 statement of facts as required, it did file its own statement of material facts. Even so, the bankruptcy court exercised discretion and did not deem all of the facts set forth by the Committee as admitted, since many of those facts were directly challenged by Limited in its summary judgment submission.

its motion for summary judgment on Count I, III, and IV; and (4) the portions of the O'Malley affidavit should have been struck in the October 2019 order.

Contemporaneously with filing its brief in this appeal, the Committee moved the Court to take judicial notice of Limited's complaint against Makary, the other member and manager of LLC, in 17 C 6623 (N.D. Ill.), and find that Limited is judicially estopped from asserting any arguments in this appeal that were in direct contravention of its contentions in that case. The Court granted that motion.[7] (Dkt. 18). The bankruptcy appeal is fully briefed. Oral argument was held on July 2, 2024.

## **LEGAL STANDARD**

"Federal district courts exercise appellate jurisdiction over 'final judgments, orders, and decrees' entered by bankruptcy judges." *Lardas v. Grcic*, 847 F.3d 561, 567 n.2 (7th Cir. 2017). On appeal, "[d]istrict courts review the bankruptcy court's legal conclusions de novo and factual findings for clear error." *In re Colone,* 2020 WL 1233775, at *2 (N.D. Ill. Mar. 12, 2020) (citing *In re Chicago Mgmt. Consulting Grp., Inc.*, 929 F.3d 803, 809 (7th Cir. 2019)). Furthermore, "[t]his Court reviews the bankruptcy court's grant of summary judgment de novo." *Knezovic v. Urban Partnership Bank*, 589 B.R. 351, 356 (N.D. Ill. 2018) (citing *Dick v. Conseco, Inc.*, 458 F.3d 573, 577 (7th Cir. 2006). Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). And the Court views the entire record with no deference given to the bankruptcy court's decision. *Ryan v. Branko Prpa MD, LLC*, 55 F.4th 1108, 1114 (7th Cir. 2022).

---

[7] This case was reassigned to the calendar of Judge LaShonda A. Hunt on June 2, 2023 (Dkt. 20). The Court apologizes for the extended delay in resolving this appeal.

## ANALYSIS

Section 547(b) of the Bankruptcy Code allows the trustee—or Committee here—to avoid any transfer of the interest of the debtor in property:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—(A) on or within 90 days before the filing of the petition. . . ; and

(5) that enables such creditor to receive more than such creditor would receive if—

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provides by the provisions of such title.

11 U.S.C. § 547(b).

Limited challenges the bankruptcy court's finding that Limited was a creditor of Debtor. The Bankruptcy Code defines a "creditor" as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). And the term "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). In the simplest terms, a claim is a right to payment, typically as defined under state law. *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 228 (2017).

Limited argues that it never did business with Debtor directly and instead sold the steel to LLC which in turn sold to Debtor, making LLC the Debtor's creditor. The bankruptcy court rejected that argument, relying primarily on the June 16, 2015 letter from LLC to Debtor and reasoning as follows:

> That letter was sent *before* the Debtor made any of the payments at issue. It expressly provided that LLC would no longer be operating and that, going forward, the Debtor was to deal with [Limited]. As a result, after June 16, 2015, LLC was no longer the party with whom the Debtor did business. Rather, at the time of the transfers in August and September 2015, the Debtor was doing business with [Limited], and the checks it issued were payments made to *and* for the benefit of [Limited].

(R. 8-2 at 452) (emphasis in original). This Court agrees with this finding.

First, the course of dealings as reflected in the documents in the record indicate that even prior to the June 2015 notice of LLC's dissolution, the three entities—Debtor, Limited, and LLC—were doing business together. Debtor's steel purchase order was directed to Limited. True, the purchase order listed the address of LLC but that fact, standing alone, does not negate the reality that Debtor sought to have Limited produce and provide these products. LLC's corresponding purchase order to Limited references Debtor and Debtor's specific purchase order number. Similarly, Limited's export invoices consistently identify Debtor as the consignee to whom these products are being delivered and Limited as the exporter due payment in return.[8] Thus, the Court is not persuaded that Debtor was actually purchasing steel directly from LLC. At oral argument, Limited contended it simply sold steel to LLC that LLC could sell to whomever LLC wanted. But these documents show that at least as to the specific transactions at issue here between Limited,

---

[8] The Court notes that Debtor's purchase order referenced PO18665-03, LLC's purchase order and invoices to Debtor referenced PO18665-00, and Limited's export invoices referenced PO18665-00 and PO18665-03. It is unclear from the record if Limited's export invoices were internal documents maintained by Limited only or provided to Debtor and/or LLC.

9

LLC, and Debtor, there was a coordinated venture between the three companies. In other words, LLC was not merely placing random steel orders with Limited in hopes that some buyer would come along and need it. Rather, LLC was facilitating Debtor's direct requests to procure steel from Limited.

But after June 2015, once LLC was dissolved, and certainly by the time Limited delivered the steel orders to Debtor around July 2015, and Debtor remitted payments to Limited in August, September, and October 2015, Debtor was conducting business with Limited directly. Consequently, the Court agrees with the Committee that even if LLC had initially been nothing more than an agent for Limited, at all relevant times for preference purposes, the business relationship existed between Debtor and Limited only.

The verified complaint filed by Limited as a 50% member of LLC and derivatively on behalf of LLC against Makary in November 2017, of which this Court has taken judicial notice, confirms this arrangement. There, Limited averred the following:[9]

- The business of LLC was the sale of steel castings in the United States that were being manufactured by Limited in India. (AC, ¶ 7).

- In May of 2015, Makary proposed the immediate closure and dissolution of LLC effective May 31, 2015, which was agreed upon by all members. (*Id.* ¶ 10).

- As of the dissolution of LLC on May 31, 2015, there were outstanding or open orders of steel castings that needed to be fulfilled by Limited and the payment for these orders that needed to be collected. The amount to be paid by customers for the open orders was $770,004.63. Attached as Exhibit 'B" is a listing of the open orders and invoicing details. (*Id.* ¶ 11).

- Under "Details of Open Invoices for Payment," Limited lists its invoice no. E1600060 dated May 31, 2015 for Debtor as customer in the amount of $48,763 with a cross-reference to LLC invoice no. 1664 in the amount of $59,177. (*Id.* Ex. B).

---

[9] Citations are to the first amended complaint filed at docket 8 in case no. 17 C 6623 (N.D. Ill.). Limited filed a second amended complaint at docket 61 which is substantially similar but does not include a signed verification.

- Upon information and belief, Makary then collected the $770,004.63 in receivables due Limited, but to date had only remitted $660,097.03, leaving a balance due to Limited of $109,907.60 in collected receivables. (*Id.* ¶ 13).

A logical reading of the complaint initiated by Limited is that LLC was dissolved a few weeks **before** the June 2015 letter to Debtor, but the plan going forward was for Limited to fulfill all outstanding steel orders while Makary agreed to collect *receivables due to Limited* for providing those products to various customers. Included on Limited's list was its invoice for steel shipped to Debtor totaling $48,763 which corresponded to LLC invoice #1664 to Debtor totaling $59,177. And that was one of the preferential payments Debtor made in October 2015.

There is a slight wrinkle here. Limited points out that Debtor paid the amounts requested in LLC's invoices, which included the price for goods charged by Limited plus a markup for LLC's services. So even though Limited invoiced LLC around $215,129, LLC actually invoiced Debtor a total of $252,393. And the latter is the amount Debtor paid to Limited through multiple checks containing the mailing address of LLC. Limited seizes upon this discrepancy and argues that even though the payments were ostensibly made out to Limited, because they were directed to LLC's address in the exact amounts invoiced by LLC, the payee name on the check is irrelevant. Stated another way, Limited posits that this is clear evidence Debtor really intended to pay LLC who was the actual creditor owed the debt, not Limited.

In support, Limited cites *In re Gruppo Antico, Inc.*, but that case is not helpful. 359 B.R. 578 (Bankr. D. Del. 2007). There, it was undisputed that the debtor purchased supplies directly from the foreign subsidiary manufacturer and paid its invoices through wire transfers to the manufacturer's U.S. bank account. *Id.* at 581. At some point, the debtor began mailing checks payable to the foreign subsidiary to a separate U.S. based entity that supported sales to the manufacturer. *Id.* The U.S. entity forwarded those checks to the foreign subsidiary's U.S. office

11

and they were deposited into the manufacturer's U.S. bank account. *Id.* Under those circumstances, the bankruptcy court agreed that the U.S. entity to whom the foreign subsidiary's checks were mailed had been a mere conduit for payments between the debtor and its vendor. *Id*. at 584. Indeed, it was clear from the purchasing, and invoicing, and payment history between the debtor and the foreign subsidiary manufacturer that the U.S. entity had no right to assert control or dominion over checks payable to the foreign subsidiary.

Unlike the U.S. entity who had no dealings with the debtor, this record supports a finding that Debtor, LLC, and Limited were intertwined in their dealings with each other. As already discussed, Debtor submitted orders to purchase steel from Limited via LLC, and after receiving those products, wrote several checks to Limited via LLC to pay the invoices from LLC. *Gruppo* is thus factually distinguishable.

In its reply brief, Limited raises for the first time the possibility that use of "Steelcast LTD" was a typo in the Debtor's system. Even if the Court were willing to consider this belated argument—and it is not—the facts easily belie that contention. The June 2015 letter references "Steelcast LLC" and partner "Steelcast LTD," which is the exact name that Debtor used on its purchase order and checks. In fact, LLC's invoices to Debtor did not specifically state who should be paid.[10] All that suggests an intentional choice by Debtor in paying Limited, not a mistake, which makes sense given that LLC was purportedly no longer operational when Debtor sent those payments. Neither side offers details as to how payments were handled between these parties outside of the preferential period that would shed light on whether this was the normal procedure or an outlier. The Court therefore concludes that Debtor's use of "Steelcast LTD" on its checks, even with LLC's address, evinces an understanding of the distinction between the two separate

---

[10] As previously noted, Limited's export invoices indicate that the amount due for products supplied to Debtor should be remitted to Limited.

entities and the nature of their business relationship, such that the intent was to pay Limited for the steel.

Limited emphasizes that LLC deposited these checks into the LLC bank account and then withheld some funds before paying Limited, and that may be enough to show that Limited received a benefit but not that Limited was an actual creditor. In support of this proposition, Limited cites *In re Southmark Corp*, where the debtor sought to recover money it paid to a bank on a loan guaranty for its subsidiary. 138 B.R. 831 (Bankr. N.D. Tex. 1992), *subsequently aff'd sub nom. Matter of Southmark Corp.*, 993 F.2d 117 (5th Cir. 1993). *Southmark* reiterates that "to be a preference, the transfer must have been made on account of an antecedent debt." 138 B.R. at 834. In other words, "[a]s a creditor, [the subsidiary] must have a right to payment from [the debtor] in bankruptcy … based on a claim underlying the transfer challenged under § 547 in this complaint." *Id.* As applied to this case, the question is does the record establish that Limited "benefited as a result of a transfer on account of an antecedent debt owed by [Debtor] to [Limited.]" *Id.* at 835. The answer is clearly yes.

The Court is not persuaded by Limited's contention at oral argument that it had no recourse if Limited delivered steel to Debtor as its customer and Debtor refused to pay for those goods. The documentary evidence establishes that Debtor intended through submission of the purchase order to Limited to procure steel just as Limited expressed its expectation to be paid by submitting invoices for the products sold. *See In re Miles*, 652 B.R. 512, 524 (Bankr. N.D. Ill. 2023) ("A valid and enforceable contract requires an offer, an acceptance, and consideration.") (citations omitted). Without doubt, there was a meeting of the minds on both sides of this deal. *Id.* ("To enforce a contract under Illinois law, the terms must be sufficiently definite and certain to ascertain what the parties have agreed to."). And even in the absence of a written contract, Illinois law provides

13

multiple avenues for recovery under quasi-contract theories based on the conduct of the parties. "A contract implied in fact arises from a promissory expression inferred from facts and circumstances that demonstrate the parties' intent to be bound." *Id.* at 526. Alternatively, "[a] contract implied in law is equitable in nature, predicated on the fundamental principle that no one should unjust enrich himself at another's expense." *Id.* at 529 (citations omitted). Any of those theories (which can be plead in the alternative) would have provided plausible theories for recovery from Debtor. Because Limited could have asserted a claim against Debtor, Limited is a creditor.

On a final note, the Court does not consider LLC's endorsement of or deposit of checks payable to Limited into LLC's bank account to be a relevant factor. The record does not indicate if this was a regular practice. Still, LLC's conduct comes as no surprise given that Limited was a 50% member of LLC. Limited has not pointed to any language in the LLC operating agreement that explains how the members managed the finances of LLC, a U.S. based business established to sell steel products made by Limited in India. In the end, LLC's actions in cashing the check and distributing payments to itself and Limited demonstrates that each was entitled to payment from Debtor for the steel orders. As such, the payments from Debtor to Limited that were made to or for Limited's benefit are avoidable preferences.[11]

Section 550(a) acts as the enforcer of section 547. 11 U.S.C. § 550(a) ("[T]o the extent that a transfer is avoided under section … 547 … the trustee may recover, for the benefit of the estate, the property transferred."). Because the preferential transfer to Limited has been established, the bankruptcy court correctly concluded that Limited was liable for payments received to satisfy its debt. (R. 8-2 at 481). Limited contends that it should be responsible for, at most, the funds LLC

---

[11] Because this Court did not consider the objected to portions of O'Malley's affidavit in this analysis, it need not discuss Limited's arguments as to the admissibility of that information.

remitted to it, which the Court believes would be $215,129, notwithstanding that Limited was paid a total of $252,393. Limited can be held liable under section 550 as either the initial transferee or the entity for whose benefit such transfer was made. 11 U.S.C. § 550(a)(1). This Court finds unconvincing Limited's argument that the Seventh Circuit's holding in *Bonded Financial Services* impacts the outcome here. *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 895 (7th Cir. 1988) ("The paradigm 'entity for whose benefit such transfer was made' is a guarantor or debtor—someone who receives the benefit but not the money."). Here, Limited was the initial transferee who received payments for Debtor's steel purchases. As such, the amounts attributable to the debt owed to Limited is what the Committee may recover from Limited.

In that respect only, this Court disagrees with the bankruptcy court that the entire preferential payment is necessarily at play here. Indeed, it is undisputed that although Limited was owed the majority of the funds for goods sold, a portion may have belonged to LLC for sales services. The record is unclear, particularly since LLC was no longer operational when these payments were made and did not defend against the adversary complaint. Accordingly, the decisions of the bankruptcy court are affirmed with instructions to enter judgment ordering Limited to return the amounts attributable to its specific debt here to the bankruptcy estate.

## CONCLUSION

For all the foregoing reasons, the decisions of the bankruptcy court are affirmed with instructions.

**DATED**: April 4, 2025                  **ENTERED**:

*LaShonda A. Hunt*
LaShonda A. Hunt
United States District Judge